Peelle, Ch. J.,
delivered the opinion of the court:
The question in this case arises under the act of April 26, 1898, section 7 (30 Stat. L., 365), which provides:
“ Sec. 7. That in time of war every officer serving with troops operating against an enemy who shall exercise, under assignment in orders issued by competent authority, a com *386 mand above that pertaining to his grade, shall be entitled to receive the pay and allowances of the grade appropriate to the command so exercised: Provided, That a rate of pay exceeding that of a brigadier-general shall not be paid in any case by reason of such assignment * *
The claimant, a lieutenant, junior grade, was assigned to the command of the U. S. S. Pamyanga, a vessel of the third rate, entitling him to the pay of a commander if such service be held “ in time of war ” within the intent and meaning of said statute.
In the Thomas case (39 C. Cls. R., 1), decided in January, 1908, the court fully considered this question, and also the right of the claimant, a naval officer, by virtue of section 13 of the act of March 3, 1899 (30 Stat. L., 1007), to the same pay for such service as that of an officer of the army of corresponding rank. The court, following the action of the War Department, held, in effect, that while there was no war in the Philippine Islands in a technical or international sense, the insurrection was such as to amount to war in fact, as there were frequent conflicts between the troops of the United States and the troops of the insurrectionists and many officers and men were killed and wounded on both sides. The statistics show that there were more losses in such conflicts than there were in the Spanish war.
That decision, we are advised, has been followed by the accounting officers, and nearly or quite all those entitled to extra pay for service while exercising a higher command have been paid; and it would seem, therefore, that as no appeal was taken from the judgment in that case the decision should now be regarded as stare decisis (Meig's case, 20 C. Cls. R., 181; Robertson v. Edelhoff, 132 U. S., 614; Hartranft v. Meyer, 149 Ib., 444).
As was said by the Supreme Court in O'Grady's case (22 Wall., 641, 648), affirming the judgment of this court (8 C. Cls. R., 451), “ the judgment of the Court of Claims, from which no appeal is taken, is just as conclusive under existing laws as the judgment of the Supreme Court, until it is set aside on a motion for a new trial; ” and by the act of March 4, 1907 (34 Stat. L., 1356), it is provided “ that in all cases hereafter so certified the said accounting officers shall, in. *387 stating balances, follow the decisions of the United States Supreme Court or of the Court of Claims of the United States after the time for appeal has expired, if no appeal be taken, without' regard to former settlements or adjudications by their predecessors.” Thus, by express legislation as well as the rulings of the Supreme Court, the decisions of the Court of Claims, when not appealed from, furnish the rules by which the accounting officers are to be guided in their settlement and adjustment of like cases.
Furthermore, after the signing of the treaty of Paris, Congress authorized the President to maintain the Regular Army upon the basis of “war strength;” and later, in the army appropriation act, approved May 26,1901 (31 Stat. L., 211), they appropriated $50,000 “ for additional pay for increased rank when in command by competent authority,” with a proviso thereto “ that no part of this sum shall be used for pay of officers assigned to higher command than their rank in the army,' unless such service shall be continuous for a period of not less than three months.”
It was not until July 4, 1902, that the President, by proclamation (32 Stat. L., 2014), declared peace to have been established in all parts of the archipelago, except with the Moro tribes.
Now, while the insurrection can not be designated as war in a technical or international sense, the hostility of the insurrectionists was manifested in the most effective way known — i. e., resort to arms; and, as stated by the President in his proclamation, those “ engaged therein, or those in sympathy with and abetting them, committed many acts in violation of the laws of civilized warfare.”
The purpose of the act in giving increased pay to those assigned to commands above that pertaining to their respective grades was evidently because of the increased danger incident thereto. Measured by that test, the claimant should recover, as the vessel he commanded was engaged in actual combat with the insurgent forces and was hit sixteen times, while the claimant himself was wounded in the left shoulder and was compelled to undergo treatment for a period of about three weeks before he could resume command of the *388 vessel. His temporary absence, however, does not deprive him of the pay to which he was otherwise entitled during such temporary absence, as was held by this court in the Collins case (37 C. Cls. B., 222).
The defendants in effect concede the law as herein stated unless by the rulings in the case of Lincoln v. The United States (197 U. S., 419) the Supreme Court has in effect overruled the decision in the Thomas case, supra, to the effect that no war existed in the Philippine Islands.
That case involved the refund of import duties collected in the port of Manila under the order of the President of July 12,1898, after the exchange of ratifications of the treaty between the United States and Spain, April 11, 1899.
The order of the President was issued while war with Spain was -flagrante, and, as said by the court, “ the natural view would be that the order expired by its own terms when the war with Spain was at an end. * * * It was a regulation for and during an existing war, referred to as definitely as if it had been named.”
The court also held that the case was ruled by the decision in the Fourteen Diamond Ring Case (183 U. S., 176, 180, 181), where it was held “that after the title passed to the United States there was nothing in the Philippine insurrection of sufficient gravity to give to the islands the character of foreign countries within the meaning of a tariff act.” That is to say, the insurrection was not of sufficient magnitude or of such firm possession by the insurgents as to baffle the military forces of the United States, though by their desultory fighting they prolonged the establishment of peace until the proclamation of the President, July 4,1902, a period of more than three years.
The decision in that case rested on the ground that the order of the President was “ intended to deal with imports from foreign countries only and Philippine ports not in the actual military control of the United States.” “ But,” says the court, “ the fact that there was an insurrection of natives not recognized as belligerents in another part of the island or even just outside its walls, did not give the President power to impose duties on imports from a country no longer for *389 eign.” Hence the question whether there was or was not war at the time such duties were collected was not material to the decision in that case and can not, therefore, be considered as affecting the ruling in the Thomas case.
We may add that in the later case of the United States v. Heinssen & Co. (206 U. S., 370) the court in effect overruled the decision in the case of Lincoln v. United States, supra, on the ground that the ratifying act of Congress June 30, 1906, in unambiguous and explicit terms ratified the collection of duties imposed on imports “ subsequent to the ratification of the treaty and prior to the levy by Congress of tariff duties,” holding that it was within the power of Congress by the act to ratify the collection of duties levied under the order of the President.
For the reasons stated the claimant is entitled to judgment in the sum of $685.